IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THREE RIVERS CONFECTIONS, LLC,   )
)
                    Plaintiff,   )          Civil Action No. 2:12-cv-1089
)
            v.                    )          Chief Judge Joy Flowers Conti
)
CHRISTOPHER M. WARMAN t/d/b/a     )
ART OF FUDGE and FUDGECO; and     )
FUDGETOPIA, LLC,                  )
)
                    Defendants.   )

## MEMORANDUM OPINION

**CONTI, Chief District Judge**

### I.  Introduction

This civil action concerns a dispute over certain trademarks that were previously registered by a third party, Fudgie Wudgie, L.P., by and through its general partner, FW Chocolatier, Inc. ("FW Chocolatier").  Plaintiff Three Rivers Confections, LLC ("Three Rivers" or "plaintiff") contends that it acquired ownership of the trademarks in question by operation of the Pennsylvania Uniform Commercial Code or as the result of a 2012 sheriff's sale.  Defendant Christopher M. Warman t/d/b/a Art of Fudge and Fudgeco ("Warman") is a former officer of Fudgie Wudgie, L.P. who has been sued by Three Rivers for alleged trademark infringement.  Warman disputes plaintiff's rights to the marks in question.

Currently pending before the court is plaintiff's motion for partial summary judgment relative to its request for a declaratory judgment establishing its ownership rights in the disputed trademarks (ECF No. 62)  Also pending is Warman's motion for leave to file an amended

answer and cross-claim against Three Rivers (ECF No. 85). For the reasons that follow, plaintiff's motion will be granted and Warman's motion will be denied.

## II. Factual Background and Procedural History

A. Registration of the Fudgie Wudgie Marks

Fudgie Wudgie, L.P. is a Pennsylvania limited partnership. (SMF ¶1.)[1] FW Chocolatier is a Pennsylvania corporation and the general partner in Fudgie Wudgie, L.P. (SMF ¶2.)

On December 3, 2009, Fudgie Wudgie, L.P, through its general partner FW Chocolatier, applied for registration of the wordmark "Fudgetopia." (SMF ¶7.) It also applied for registration of a distinct logo mark (hereafter, the "Fudgie Wudgie logo") consisting of an oval with the words "fudgie wudgie" appearing in wavy lettering in the center of the oval and the words "fudge and chocolate factory" appearing in small print at the bottom of the oval. (Id. ¶5.) Fudgie Wudgie, L.P. subsequently applied for registration of the wordmark "Fudgie Wudgie" (hereafter, the "Fudgie Wudgie wordmark") on February 4, 2010. (Id. ¶3.) On January 11, 2011, the United States Patent and Trademark Office ("PTO") assigned Registration No. 3902788 to the Fudgie Wudgie logo and Registration No. 3902958 to the Fudgie Wudgie wordmark. (SMF ¶¶ 4, 6, Pl.'s Ex. C, ECF No. 65-3; Pl.'s Ex. D, ECF No. 65-4; Pl.'s Ex. QQ at 5-6, ECF No. 65-43.) On March 13, 2012, the PTO assigned Registration No. 4112275 to the Fudgetopia wordmark. (SMF ¶8, Pl.'s Ex. E, ECF No. 65-5; Pl.'s Ex. QQ at 5, ECF No. 65-43.)

At the time that Fudgie Wudgie, L.P. registered these three marks (hereinafter referred to collectively as the "Fudgie Wudgie Marks"), Warman was an officer of Fudgie Wudgie, L.P.

---

[1] The court refers to plaintiff's Statement of Material Facts in Support of the Motion for Partial Summary Judgment (ECF No. 64, hereafter, "SMF") to the extent that the plaintiff's asserted facts are not specifically denied by Warman in his response (ECF No. 86) or otherwise controverted on this record. *See* LCvR 56(C)(1)(a) and 56(E). Where necessary, the court will rely on uncontested portions of the record to supply the background facts of this case. Except as otherwise indicated, the following facts are not genuinely disputed by the parties.

(Id. ¶10.)  Warman's then-wife, Christine Falvo ("Falvo"), was the chief executive officer ("CEO") of Fudgie Wudgie, L.P. and FW Chocolatier.  (*See* Warman Dep. 46:9-47:14, 50:6-51:5, ECF No. 65-47.)  Warman did not personally have an ownership interest in Fudgie Wudgie, L.P. or FW Chocolatier.  (Warman Decl. ¶8, ECF No. 84).

   B.   The Secured Loan Transactions

Beginning in 2009, Fudgie Wudgie, L.P. – through FW Chocolatier and Falvo – entered into a series of secured loan agreements pursuant to which Fudgie Wudgie, L.P.'s assets were pledged as collateral to its secured creditors.  (SMF ¶¶ 11, 14.)

On June 5, 2009, Fudgie Wudgie, L.P. executed a revolving demand note in favor of Citizens Bank of Pennsylvania ("Citizens").  (SMF ¶12.)  The original principal amount of this note (hereafter, the "First Citizens Note") was $450,000, and the note was secured by "all collateral" of Fudgie Wudgie, L.P.  (*Id.*)  In connection with the First Citizens Note, Fudgie Wudgie, L.P. entered into a "Loan and Security Agreement" and "Pledge Agreement" with Citizens.  (Id.)  The security agreement between Fudgie Wudgie, L.P. and Citizens specifically defined Fudgie Wudgie, L.P.'s "collateral" to include, without limitation, all its "personal property," both existing and subsequently acquired, including "general intangibles."  (*See* SMF ¶13; Pl.'s Ex. G at p.3, §2.2(c), ECF No. 65-7.)  In connection with the loan, FW Chocolatier and Falvo each signed an "Unlimited Guaranty" of repayment.  (SMF ¶12.)  On September 3, 2009, Citizens filed a UCC-1 Financing Statement with the Pennsylvania Department of State which indicated its security interest in "[a]ll personal property of Debtor of every kind and nature, whether now owned or hereafter acquired, including without limitation … general intangibles." (SMF ¶15, Pl.'s Ex. L, ECF No. 65-12.)

Fudgie Wudgie, L.P. subsequently executed a Term Note in favor of Citizens (the "Second Citizen's Note") in the principal amount of $136,000 (SMF ¶¶16-17; Pl.'s Ex. M at p. 1, ECF No. 65-13)  and an additional Term Note (the "Third Citizens Note") in the principal amount of $198,000  (SMF ¶¶ 20-21; Pl.'s Ex. S, ECF No. 65-19).   Both of these loans were secured by certain equipment owned by Fudgie Wudgie, L.P. as set forth in the relevant security agreements and UCC-1 financing statements.  (SMF ¶¶ 16, 18-19, 21-23; Pl.'s Ex. N at 2, ¶2.2(c); Pl.'s Ex. R, ECF No. 65-18; Pl.'s Ex. T at 2, ¶2.2(c), ECF No. 65-20; Pl.'s Ex. Y, ECF No.65-25.)

On July 30, 2010, Fudgie Wudgie, L.P and FW Chocolatier collectively entered into a Subordinated Secured Term Loan Agreement with Meakem Becker Venture Capital I, L.P. ("Meakem"). (SMF ¶26.)  Pursuant to this loan agreement and the corresponding promissory note (hereafter, the "Meakem Note"), Meakem provided a one-time working capital loan to Fudgie Wudgie, L.P. and FW Chocolatier  in the principal amount of $250,000, to be secured by all "collateral" of Fudgie Wudgie, L.P.  (Id. ¶¶ 26- 27.)  Under the terms of the accompanying security agreement, Fudgie Wudgie, L.P.'s "collateral" was expressly defined to include "all of [its] now owned and hereafter acquired … general intangibles," including their "customer lists, … books, records, goodwill,…trademarks, tradenames, service marks, tradestyles, trademark applications, trade secrets… and formulae…"  (SMF ¶27; Pl.'s Ex. BB at 1, ¶1, ECF No. 65-28.) On August 3, 2010, Meakem filed a UCC-1 financing statement expressly setting forth its subordinated security interest in Fudgie Wudgie L.P.'s "trademarks, tradenames, service marks, tradestyles, trademark applications and trade secrets."  (SMF ¶¶ 28-29, Pl.'s Ex. CC at 1, ECF No. 65-29.)

Finally, in October 2011, FW Chocolatier and Falvo, on behalf of Fudgie Wudgie, L.P., signed a "Revolving Line of Credit Secured Promissory Note" and security agreement in favor of Phin W. Stubbs, the president and CEO of Three Rivers.  (SMF ¶34, Pl.'s Ex. EE, ECF No. 65-31.)  This note (hereafter, the "Stubbs Note"), covered a maximum aggregate principal sum of $2,000,000, and was purportedly secured by Fudgie Wudgie L.P.'s "collateral," which was defined in the security agreement to include "all of the [company's] assets, properties, privileges, claims, and rights of every kind and nature, tangible and intangible."  (SMF ¶35, Pl.'s Ex. EE, Security Agreement ¶1.01 and Ex. A thereto, ECF No. 65-31.)[2]

C.   The Citizens Action and Plaintiff's Acquisition of the Secured Loans

In June 2011, Citizens sent a demand to Fudgie Wudgie, L.P. for payments due as a result of Fudgie Wudgie L.P.'s defaults under the First, Second, and Third Citizens Notes.  (SMF ¶30.)  Warman acknowledges that, by July 2011, Fudgie Wudgie, L.P. was at least $3 million in arrears to its creditors.  (Id. ¶32.)  Consequently, Citizens filed a Complaint in Confession of Judgment against Fudgie Wudgie, L.P. on July 11, 2011, in the Court of Common Pleas of Allegheny County (the "Citizens Action").  (SMF ¶ 33.)  The complaint sought judgment in the amount of $560,619.49 for amounts owing on the First, Second, and Third Citizens Notes.  (Id.)

Thereafter, on March 9, 2012, Three Rivers entered into a "Loan Sale Agreement" with Citizens pursuant to which Three Rivers purchased the First, Second, and Third Citizens Notes and was assigned Citizens' security interests in all the Fudgie Wudgie assets securing those notes.  (SMF ¶36, Pl.'s Ex. FF, ECF No. 65-32.)  Similarly, on or about March 9, 2012, Three Rivers purchased the Meakem Note and took an assignment of Meakem's underlying security interests in all the Fudgie Wudgie assets securing that note.  (SMF ¶37, Pl.'s Ex. GG, ECF No.

---

[2] Warman denies that the loan agreement with Stubbs was ever consummated based on an alleged breach of the agreement by Stubbs; however, for purposes of this memorandum opinion, the court deems this dispute immaterial.

65-33.)  On March 20, 2012, Three Rivers filed amended UCC financing statements to reflect its status as the new secured party of record with respect to the collateral pledged against the three Citizens Notes and the Meakem Note.  (SMF ¶38, Pl.'s Ex. HH, ECF No. 65-34, Pl.'s Ex. II, ECF No. 65-35, Pl.'s Ex. JJ, ECF No. 65-36, Pl.'s Ex. KK, ECF No. 65-37.)  In addition, on April 19, 2012, Three Rivers filed a praecipe to substitute itself as judgment creditor relative to the $560,619.49 confessed judgment in the Citizens Action.  (SMF ¶39, Pl.'s Ex. LL, ECF No. 65-38.)

        On or about April 30, 2012, Stubbs executed a "Contribution and Assumption Agreement" with Three Rivers, pursuant to which Stubbs ostensibly assigned the Stubbs Note to Three Rivers.  (SMF ¶40; Pl.'s Ex. MM, ECF No. 65-39.)[3]  Thereafter, Three Rivers filed a UCC-1 financing statement setting forth its purported security interest in "[a]ll of the assets…. and rights of every kind and nature, tangible and intangible... now owned or hereafter acquired by [Fudgie Wudgie, L.P.]."  (SMF ¶41, Pl.'s Ex. NN, ECF No. 65-40.)

### D.  Fudgie Wudgie L.P.'s Execution of the Collateral Agreement and Trademark Assignment

        On May 26, 2012, Fudgie Wudgie, L.P. and FW Chocolatier, through Falvo, executed an "Agreement for Acceptance of Collateral in Partial Satisfaction of Obligations" (the "Collateral Agreement"), which included a number of acknowledgments and representations by Fudgie Wudgie, L.P.  (SMF ¶42; Pl.'s Ex. OO, ECF No. 65-41.)  First, Fudgie Wudgie, L.P. expressly acknowledged that it was indebted to Three Rivers in the amounts of:  (a) $560,619.49 by virtue of the First, Second and Third Citizens Notes; (b) $341,762.08 by virtue of the Meakem Note; and (c) $1,322,500.00 by virtue of the Stubbs Note.  (Pl.'s Ex. OO, § II ("Representations by

---

[3] Although Warman appears to dispute the validity of this transaction, the court does not consider this dispute material for purposes of this memorandum opinion.

Debtor"), ¶¶ 1, 5, 8, ECF No. 65-41.)  Fudgie Wudgie, L.P. acknowledged that it was in default of its payment obligations under the various notes and that the amounts owing were secured by the collateral as described in the various UCC-1 financing statements.  (Id. ¶¶ 2, 4, 6, 7, 9, 10.)  In addition, Fudgie Wudgie, L.P. expressly represented that it "possesse[d] title to the Collateral and that no third party maintain[ed] an interest in the Collateral that is superior to the secured interests of [plaintiff]."  (Id. ¶13.)

Under the terms of the Collateral Agreement, the parties expressly agreed that, while the value of Fudgie Wudgie L.P.'s secured collateral was less than $560,619.49, such collateral would be surrendered to plaintiff in full satisfaction of Fudgie Wudgie L.P.'s obligations under the various Citizens Notes and no further remedies would be sought relative to those obligations.  (Pl.'s Ex. OO, §III ("Agreement"), ¶¶ 1, 2, 6, 7, ECF No. 65-41.)  At the same time, Three Rivers expressly reserved its rights as a secured creditor to enforce Fudgie Wudgie, L.P.'s obligations relative to the Meakem Note and the Stubbs Note.  (Id. ¶8.)  Contemporaneous with its execution of the Collateral Agreement, Fudgie Wudgie, L.P. signed a bill of sale conveying all its rights, title, and interest in the collateral to Three Rivers.  (Pl.'s Ex. PP, ECF No. 65-42.)

On June 1, 2012, Falvo, on behalf of Fudgie Wudgie, L.P., executed a document styled "Trademark Assignment," whereby Fudgie Wudgie, L.P., in return for "good and valuable consideration," assigned to Three Rivers "all right, title and interest in and to the [Fudgie Wudgie Marks] including the registrations and applications therefor… together with the goodwill of the business associated and symbolized by the Marks, along with the right to sue and recover for damages and profits in connection with any past, present or future infringement or dilution."  (Pl.'s Ex. QQ at 3, ECF No. 65-43; id. at 4.)  This assignment was recorded by the PTO on June 4, 2012.  (Id. at 5.)

E.  The State Court Action and Sheriff's Sale

On August 22, 2011, Sysco Corporation and Sysco Pittsburgh, LLC (collectively, "Sysco") filed a complaint against FW Chocolatier, Fudgie Wudgie, L.P., and related parties in the Allegheny County Court of Common Pleas in an action styled *Sysco Corporation and Sysco Pittsburgh, LLC v. FW Chocolatier, LLC t/d/b/a Fudgie Wudgie, Fudgie Wudgie, L.P., FW Chocolatier, Inc., and Christine M. Falvo,* GD No. 11-17048 (the "State Court Action").  (SFM ¶48.)  Default judgments were entered against Fudgie Wudgie, L.P. and FW Chocolatier in the State Court Action on November 23, 2011 in the amount of $274,138.71.  (Id. ¶49.)  On June 26, 2012, Sysco filed a Praecipe to Reissue the Writ of Execution against Fudgie Wudgie, L.P. and FW Chocolatier in the amount of $290,182.95.  (Id. ¶50.)  The reissued writ directed the sheriff to levy and sell the property of the defendants in the State Court Action.  (Id. ¶ 51.)  The sheriff subsequently levied on the personal property found at 3510 Smallman Street in Pittsburgh, which was Fudgie Wudgie, L.P.'s former (and plaintiff's then-current) place of business.  (Id. ¶52; Warman Dep. 52:3-5, ECF No. 65-47.)  A sale of this property was scheduled for August 29, 2012.  (SMF ¶52.)

On July 25, 2012, Three Rivers filed a "Goods Claim" in the Allegheny County sheriff's office asserting that it possessed a fee simple ownership interest and properly perfected security interest in all the property of Fudgie Wudgie, L.P. and FW Chocolatier that the sheriff had levied upon.  (*See generally* Pl.'s Ex. RR, ECF No. 65-44; *id.* at p. 3; SMF ¶¶ 53-54.)  The sheriff's sale nevertheless went forward on August 29, 2012 due to Three Rivers' failure to post a bond to stay the sale pending resolution of its Goods Claim.  (SMF ¶55.)  For the sum of $276,000, Three Rivers ostensibly purchased all the property levied upon and sold at the sheriff's sale, including

"[a]ll Trade names and trademarks" of the judgment debtors, as documented by the sheriff's office bill of sale.  (Pl.'s Ex. SS at 2, ECF No. 65-45.)[4]

### F.   The Present Litigation

Three Rivers commenced this litigation against Warman and Fudgetopia, LLC[5] on August 1, 2012, with the filing of its eleven-count complaint asserting violations of the Trademark Act of 1946, as amended, 15 U.S.C. §1051 *et seq.* (the "Lanham Act") and related claims under Pennsylvania law.  Three Rivers subsequently filed an amended complaint (ECF No. 14), which is the operative pleading at this juncture.  Relevant for present purposes is Count XII of the amended complaint, in which plaintiff seeks "a declaratory judgment[6] finding that Three Rivers is the lawful and rightful owner of the Fudgie Wudgie Marks, that Defendants have no property or other rights in the Fudgie Wudgie Marks, and that the transfers of the Fudgie Wudgie Marks were lawful, valid and proper."  (Amended Compl. ¶ 179, ECF No. 14).

On September 5, 2014, Three Rivers filed the pending motion for partial summary judgment (ECF No. 62) relative to Count XII of the amended complaint, together with its supporting brief (ECF No. 63), concise statement of material facts (ECF No. 64), and appendix (ECF No. 65).  On February 26, 2015, defendant Warman filed his response to plaintiff's motion (ECF No. 82), an "answer" to plaintiff's concise statement of material facts (ECF No. 86), a

---

[4] On September 12, 2012, Warman filed "Objection to Sheriff's Determination of Ownership" in the State Court Action.  (SMF ¶58.)  The objection was denied on April 10, 2013, as having been untimely filed.  (Pl.'s Ex. TT, ECF No. 65-46.)

[5] This court granted plaintiff's motion for default judgment against Fudgetopia, LLC on September 24, 2014 (*see* ECF No. 68).

[6] The Declaratory Judgments Act, 28 U.S.C. §§ 2201-02, provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  *Id.* § 2201.

declaration with supporting exhibits (ECF No. 83), and a declaration from Falvo (ECF No. 84).[7] Plaintiff's reply in support of the pending motion (ECF No. 92) was submitted on March 18, 2015.

Contemporaneous with the filing of his opposition to the pending summary judgment motion, Warman filed a motion for leave to file an amended answer and cross-claim against Three Rivers (ECF No. 85). Three Rivers filed its response in opposition to Warman's motion (ECF No. 89) on March 17, 2015.

### III. Standard of Review

A. RULE 56

Federal Rule of Civil Procedure 56 provides in relevant part:

**(a) Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion. ….

**(c) Procedures**.

**(1) *Supporting Factual Positions***. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

**(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(a), (c)(1)(A), (B).

---

[7] Plaintiff submitted a "Completed Declaration of Christine Falvo" and supporting exhibits (ECF No. 87) on March 3, 2015.

"[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). "[T]he nonmoving party must come forward with 'specific facts showing there is a *genuine issue for trial.*'" *Matsushita,* 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)) (emphasis in the original). An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir.2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof.") (citing *Anderson,* 477 U.S. at 248; *Celotex Corp.*, 477 U.S. at 322–23). The court must rely on the substantive law to identify which facts are material. *Abington Friends Sch.*, 480 F.3d at 256 (citing *Anderson*, 477 U.S. at 248).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party, and must draw all reasonable inferences and resolve all doubts in favor of the nonmoving party. *Doe v. Cnty. of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir.2001); *see Woodside v. Sch. Dist. of Phila. Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001); *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 151 (3d Cir.1999). A court must not engage in credibility determinations at the summary judgment stage. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir.1998).

In this case, defendant Warman is proceeding *pro se*. Pleadings and other submissions by a *pro se* litigant are generally given a liberal construction. *Salley v. Sec'y Pa. Dept. of Corr.*, 565 F. App'x 71, 81 (3d Cir. 2014); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011). Due to

the "understandable difference in legal sophistication," a *pro se* party must be held to a less exacting standard than trained counsel. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Nevertheless, "notwithstanding giving a *pro se* litigant every opportunity to functionally respond in some meaningful way to a summary judgment motion and the Court's liberal construction of Plaintiff's submissions as a pro se litigant, the same standards for summary judgment still apply." *Winfield v. Mazurkiewicz*, Civ. No. 11–584, 2012 WL 4343176, at *2 (W.D. Pa. Sept. 21, 2012) (citing decisions). Thus, a pro se litigant defending a Rule 56 motion "must still set forth facts sufficient to survive summary judgment." *Ezeiruaku v. United States*, Civ. No. 00–2225, 2000 WL 1751077 at *3 E.D. Pa. Nov. 29, 2000.

## B. RULE 15

Federal Rule of Civil Procedure 15(a) provides that "[a] party may amend its pleading once as a matter of course within:  (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading …"  Fed. R. Civ. Pa. 15(a)(1)(A) and (B).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  Under Rule 15, leave to amend should be "freely give[n]… when justice so requires."  *Id.*  Nevertheless, leave to amend may be denied in the court's discretion on the basis of undue delay, bad faith, dilatory motive, prejudice, or futility.  *Yoder v. Wells Fargo Bank, N.A.*, 566 F. App'x 138, 142 (3d Cir. 2014) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).

## IV. Discussion

### A.  PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

In its motion for partial summary judgment, Three Rivers requests that the court enter a declaratory judgment establishing that Three Rivers is the lawful and rightful owner of the Fudgie Wudgie Marks, that Warman has no property or other rights in the marks, and that the transfers of the marks to Three Rivers were lawful, valid and proper.  (Amended Compl. ¶ 179, ECF No. 14.)  Three Rivers contends that it lawfully acquired ownership of the subject marks by operation of the Pennsylvania UCC or through its purchase of Fudgie Wudgie, L.P.'s assets at the August 29, 2012 sheriff's sale.

In support of its motion for partial summary judgment, Three Rivers submitted, among other things, copies of:

(i)     documents evidencing the various secured loans which Fudgie Wudgie, L.P. entered into with its creditors (Pl.'s Exs. F-K, M-Q, S-X, Z-BB, DD-EE);

(ii)    documents evidencing the assignment of those loans to Three Rivers (Pl.'s Exs. FF-GG, MM);

(iii)   related UCC filings evidencing the perfection of the creditors' (and Three Rivers') security interests in Fudgie Wudgie, L.P.'s assets as a result of the secured loans (Pl.'s Exs. L, R, Y, CC, HH-KK, NN);

(iv)    the May 26, 2012 agreement and Bill of Sale pursuant to which Fudgie Wudgie, L.P. ostensibly transferred its collateral, including any rights it had to the subject trademarks, to Three Rivers in satisfaction of the First Citizens Note (Pl.'s Exs. OO-PP);

(v)     Fudgie Wudgie, L.P.'s written assignment of its rights in the Fudgie Wudgie Marks to Three Rivers (Pl.'s Ex. QQ); and

(vi)    the bill of sale evidencing plaintiff's purchase of Fudgie Wudgie, L.P.'s assets, including its rights to the subject trademarks, at the August 29, 2012 sheriff's sale (Pl.'s Ex. SS).

In addition to the foregoing proof, Three Rivers submitted records from PTO's online database (the Trademark Electronic Search System, or "TESS") showing that Three Rivers is

13

listed as the current owner of the registered Fudgie Wudgie Marks.[8] (Pl.'s Ex. C-E, ECF Nos. 65-3 through 65-5.)  Under the Lanham Act, a trademark's registration on the USPTO's principal register is admissible in evidence and constitutes *prima facie* evidence of the validity of the subject mark and of the registration of the mark, the registrant's ownership of the mark, and the registrant's exclusive right to use the registered mark in commerce in connection with the goods specified in the registration.  15 U.S.C. §§1057(b), 1115(a).[9]  These statutory presumptions may be rebutted by, among other things, proof that the registration was procured by fraud or that the registered trademark has been abandoned by the registrant.  *See* 15 U.S.C. §1115(b).

The Lanham Act allows for the recordation of a written assignment of a registered mark or a written assignment of a mark for which an application to register is pending.  15 U.S.C. §1060(a)(1) and (3).  The recorded assignment of a mark is *prima fa*cie valid, and a party challenging the validity of the assignment has the burden to prove otherwise.  *See Cochran Firm, P.C. v. Cochran Firm Los Angeles, LLP,* 572 F. App'x 491, 493 (9th Cir. 2014) (appellee's evidence that the trademark at issue was registered and that its subsequent assignment to appellee was recorded constituted *prima facie* evidence that the mark was valid and that the assignment was duly executed) (citing 15 U.S.C. §§1115(a), 1060(a)(3)); *see Inc. v. HSieh,* 348 F. Supp. 2d 1089, 1093 (N.D. Cal. 2004) ("A recorded assignment of a mark is *prima facie* valid, thus the burden falls on the challenging party to prove otherwise.").  In this case, the PTO records

---

[8] Although Warman concedes that Three Rivers is listed as the current holder of the subject marks, this fact can also be judicially noticed.  See F.R.E. 201(b)(2); *Bhasin v. Pathak*, No. EDCV 13-00293-VAP (OPx), 2013 WL 1871508, at *2 (C.D. Cal. May 3, 2013) (court taking judicial notice of public records of a registered trademark listed on "TESS").

[9] If a mark has become "incontestable" under the Lanham Act, its registration "shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce," subject only to the affirmative defenses listed in Section 33(b) of the Act.  15 U.S.C. §1115(b).  In order to become "incontestable," a mark must, among other things, be continuously used in commerce for five years after registration. 15 U.S.C. §1065.  There is no suggestion in this case that the subject Fudgie Wudgie Marks are incontestable.

submitted by Three Rivers reflect the recordation of its assignment of the subject marks from

Fudgie Wudgie, L.P.  (Pl.'s Ex. C-E, ECF Nos. 65-3 through 65-5.)

In his response to plaintiff's motion (ECF No. 82), Warman argues that the registrations

of the various Fudgie Wudgie marks were invalid at the outset and/or that the marks were lost to

Three Rivers through prior assignment or abandonment.  Warman also appears to challenge the

validity of certain business transactions between Fudgie Wudgie, L.P. and Three Rivers pursuant

to which agents of Three Rivers assumed the management of Fudgie Wudgie, L.P.'s business

affairs.

To support his arguments, Warman supplied his own declaration (ECF No. 84) as well as

a declaration from Falvo (ECF No. 87)[10] and various documentary exhibits.  Three Rivers

contends that this evidence is largely inadmissible and, in any event, fails to demonstrate the

existence of a genuinely disputed issue of material fact relative to the declaratory judgment claim

in Count XII.  Having carefully reviewed the record and considered the parties' competing

arguments, the court agrees that Warman's evidence fails to conform to the requirements of Rule

56 in material respects and otherwise fails to establish a genuine dispute relative to plaintiff's

ownership of the subject trademarks and exclusive rights therein.

1.  Were the Trademark Registrations Invalid?

Warman's first challenge is to the validity of the trademark registrations.  Warman

contends that the PTO's registration of the "Fudgetopia" wordmark was invalid because the

mark was not used as stated in the registration.  To apply for registration under Section1(a) of the

Lanham Act, commonly referred to as "use registration," a mark must be "used in commerce" as

---

[10] Falvo's original unsworn declaration (ECF No. 83) failed to include a statement that it was being offered "under penalty of perjury," as required by 28 U.S.C. §1746.  Consequently, that declaration is inadmissible and will not be considered by the court.

of the date the application for registration is filed.  15 U.S.C. § 1051(a)(1); 37 C.F.R.

§2.34(a)(1)(i).  Use in commerce means "the bona fide use of a mark in the ordinary course of

trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127.  "The registration of

a mark that does not meet the use [in commerce] requirement is void *ab initio*."  *Courture v.*

*Playdom, Inc.,* 778 F.3d 1379, 1380 (Fed. Cir. 2015) (internal quotation mark and citation

omitted).

In this case, the PTO's online records indicate that Fudgie Wudgie L.P.'s application for

the Fudgtopia mark was based not on "use registration" under §1(a), but on an expressed bona

fide intention to use the mark in future commerce pursuant to § 1(b) of the Lanham Act.  15

U.S.C. §1051(b); 37 C.F.R. §2.33.  (See Pl.'s Ex. E, ECF No. 65-5.)  When an applicant

proceeds under Section 1(b), the USPTO must first determine that the mark is registerable, after

which it issues a notice of allowance of use. 15 U.S.C. §§ 1051(d)(1), 1063(b)(2).  Thereafter, an

applicant must provide, within six months' time (or later if an extension is granted), a verified

statement that the mark is in use in commerce as of a specified date.  15 U.S.C. §1051(d)(1).

The mark can be registered only after examination and acceptance of the applicant's statement of

use.  *Id*.  In the course of such examination, the USPTO examiner "may require the applicant to

furnish such information, exhibits, affidavits or declarations, and such additional specimens as

may be reasonably necessary to the proper examination of the application."  37 C.F.R. §2.61(b).

According to the PTO's database records, the Fudgtopia wordmark was first used in commerce

on December 1, 2011.  (Pl.'s Ex. E, ECF No. 65-5.)

Under Section 7 of the Lanham Act, an application to register a mark, once granted,

constitutes constructive use of the mark retroactively to the date of application.  See 15 U.S.C.

§1057(c). Federal courts have long recognized a mark's registration as *prima facie* evidence of

its use. *See Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 504 (7th Cir. 1992) (trademark registration creates a "rebuttable presumption of use as of the filing date.") (citation omitted); *Compak Cos., LLC v. Johnson*, No. 03-C-7427, 2011 WL 686263, at *3 (N.D. Ill. Feb. 17, 2011); *see also J.C. Hall Co. v.Hallmark Cards, Inc.*, 340 F.2d 960 (C.C.P.A 1965) ("A certificate of registration constitutes prima facie evidence of ownership and ownership imparts prima facie evidence of use even though there be no evidence of record relative to such use.").

In an effort to rebut this presumption, Warman refers the court to Falvo's declaration; however, nothing in Falvo's declaration establishes Fudgie Wudgie, L.P.'s failure to use the Fudgetopia wordmark. At most, Falvo's declaration and supporting exhibits show only that she sent an email to her attorney on October 18, 2011 expressing an interest in transferring ownership of the Fudgetopia trademark to Warman. (*See* Falvo Decl. at 2, ECF No. 87; Falvo Supporting Exhibits at 1, ECF No. 87-1.)

Warman's only other evidence of nonuse is his own conclusory, hearsay account of a remark Falvo allegedly made during a November 2011 meeting to the effect that she "didn't care about" the Fudgetopia mark and that "Fudgie Wudgie was not using the mark and had no intent to use the mark…." (Warman Decl. ¶15, ECF No. 84.) According to Warman, a former executive of the Hershey Chocolate Company was present at this meeting and required all those present to record Falvo's statement. Notably, however, Falvo's declaration does not address or affirm the statement attributed to her. Furthermore, Warman did not produce the referenced written memorialization of Falvo's alleged remarks, or produce any corroborating statement from the former Hershey executive – or other individuals, for that matter, who were allegedly present at the time. Federal Rule of Civil Procedure 56(c) requires that declarations be made on "personal knowledge" and "set out facts that would be admissible in evidence." "[C]onclusory,

self-serving affidavits are insufficient to withstand a motion for summary judgment." *Kirleis v. Dickie, McCamey and Chilcote*, P.C., 560 F.3d 156, 161 (3d Cir. 2009). Taken by itself, Warman's self-serving, hearsay account of Falvo's alleged remark fails to comport with the requirements of Federal Rule of Civil Procedure 56(c)[11] and is insufficient as a matter of law to rebut plaintiff's *prima facie* evidence that the "Fudgetopia" mark was used as stated in the registration.

With respect to the "Fudgie Wudgie" wordmark and logo, Warman claims that their registration is invalid because it includes an erroneous date of first use or because it was filed in the wrong applicant's name. Warman claims that he created the "Fudgie Wudgie" wordmark and logo in 1986 and began using them in connection with confectionary items in 1989. Warman points out that the records of registration of these marks state a first use as of 1989, which is a date prior to Fudgie Wudgie L.P.'s legal existence.[12] From this evidence, Warman posits that "FW Entities intentionally used my date of use which means that either the registration is invalid for intentionally giving wrong information to the trademark office or that the registration was supposed to be filed in my name which also makes the registration invalid as the proper owner must be named in the registration." (Warman Br. Opp. to Mot. Partial Summ. J. 6, ECF No. 82.)

Although a trademark's registration constitutes *prima facie* evidence of the validity of the registration, 15 U.S.C. §1115(a), this presumption may be rebutted upon a showing that the registration was fraudulently obtained. *Id.* §1115(a) and (b)(1); s*ee* 15 U.S.C.A. §1064(3) (a

---

[11] Given that the alleged nonuse of the Fudgetopia mark by Fudgie Wudgie, L.P. could have been directly asserted by Falvo but was not, the court has no reason to conclude that Warman's statement is reducible to admissible evidence.

[12] The record shows that Fudgie Wudgie, L.P. came into existence in September 29, 2008. (Pl.'s Ex. A, ECF No. 65-1.)

trademark's registration is subject to cancellation at any time if an injured party can show that its registration was fraudulently obtained). The party seeking to establish fraud, however, faces a "'heavy burden.'" *La Cena Fine Foods, Ltd. v. Jennifer Fine Foods,* Civil Action No. 01-CV-5746 (JLL), 2006 WL 2014503, at *4 (D.N.J. July 18, 2006) (quoting *Halo Mgmt., LLC v. Interland, Inc.,* 308 F. Supp. 2d 1019, 1031 (N.D. Cal. 2003)). A finding of fraud in trademark registration is appropriate "only if the applicant or registrant knowingly makes a false, material representation with the intent to deceive the PTO." *In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009); *see also Haggar Intern. Corp. v. United Co. for Food Indus. Corp.*, 906 F. Supp. 2d 96, 107 (E.D.N.Y. 2012) ("Fraud in obtaining a trademark registration occurs when an applicant knowingly makes a false, material misrepresentation of fact in connection with its application."). False statements that are made inadvertently or in good faith are not sufficient because a subjective intent to deceive is an essential element of fraud. *La Cena Fine Foods,* 2006 WL 2014503, at *4 ("Fraud 'will not lie if it can be proven that the statement, though false, was made with a reasonable and honest belief that it was true.'")(citing *Smith Int'l., Inc. v. Olin Corp.*, 209 U.S.P.Q. 1033, 1043 (T.T.A.B. 1981)); see 6 J. Thomas McCarthy, *McCarthy onTrademarks and Unfair Competition* §31:66 (4th ed. 2008) ("Statements of honest, but perhaps incorrect belief or innocently made inaccurate statements of fact do not constitute 'fraud.' [ ] Fraud requires proof of a knowingly false statement was [sic] made with an intent to deceive the PTO. [ ]") (internal footnotes omitted). Moreover, the requisite elements must be shown by clear and convincing evidence. *La Cena Fine Foods*, 2006 WL 2014503, at *4; *Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*, 841 F. Supp. 1339, 1353 (E.D.N.Y.1994).

Here, Warman did not produce evidence that Fudgie Wudgie, L.P. fraudulently stated an incorrect date of first use for the Fudgie Wudgie wordmark and logo. An incorrect date of first

use is "not a material representation that serves as grounds for cancellation [of a registration] so long as the first use preceded the application date."  *Miyano Machinery USA, Inc. v. MiyanoHitec Machinery, Inc.*, 576 F. Supp. 2d 868, 880 (N.D. Ill. 2008) (citing *Pony Express Courier Corp. v. Pony Express Delivery Serv.*, 872 F.2d 317, 319 (9th Cir.1989)); *see* 6 McCarthy § 31:74 (noting that the Trademark Board has consistently held that a misstatement of the date of first use is not fraudulent so long as there has been valid use of the mark prior to the filing date).  In this case, the record shows that Fudgie Wudgie, L.P. came into legal existence on September 29, 2008 and applied for registration of the Fudgie Wudgie logo and wordmark, respectively on December 3, 2009 and February 4, 2010.  (Pl.'s Ex. A-C, ECF No. 65-1through 65-3.)  There is no evidence in the record pinpointing the date on which Fudgie Wudgie, L.P. first made actual use of the "Fudgie Wudgie" wordmark and logo in commerce.  Thus, no evidence is before the court that could support a finding that Fudgie Wudgie, L.P. failed to use the subject marks in commerce prior to the date on which it applied for trademark registration.  Moreover, given the close relationship between Warman and Fudgie Wudgie, L.P., it is possible that Fudgie Wudgie, L.P. claimed the 1989 date of first use under the theory that the prior user of the marks was its predecessor in title.  *See* 15 U.S.C. §1127( defining "applicant" to include "predecessors"); 37 C.F.R. § 2.38 ("If the first use of the mark was by a predecessor in title …, and the use inures to the benefit of the applicant, the dates of first use … may be asserted with a statement that first use was by the predecessor in title … as appropriate.").  In sum, the 1989 date which is listed as the date of first use in Fudgie Wudgie, L.P.'s registrations is not evidence that Fudgie Wudgie, L.P. submitted materially false information to the PTO.

Even if a false statement was included in Fudgie Wudgie, L.P.'s application – an assumption which this court has no basis to make given that the application is not part of the

summary judgment record, Warman produced no evidence suggesting fraudulent intent. Instead
he offers only conclusory allegations that some, unnamed person, acting on behalf of Fudgie
Wudgie, L.P., may have "intentionally [given] wrong information to the trademark office."
(Warman Resp. Mot. Summ. J. at 5, ECF No. 82.)  Absent from the record is any indication as to
who may have made the false representation or when it occurred, and there is no evidence to
support a finding of an intent to deceive.  Accordingly, a reasonable jury would have no basis in
this record for concluding that the registrations of the subject marks were fraudulently obtained.

Warman also failed to demonstrate the existence of a triable issue of fact relative to his
theory that Fudgie Wudgie, L.P. improperly listed itself, instead of Warman, as the rightful
owner of the Fudgie Wudgie wordmark.  Courts have recognized that, if the entity filing an
application for registration is not the owner of the mark as of the filing date, the application is
void *ab initio*.  *AFD China Intell. Property Law (USA) Office, Inc., v. AFD China Intell.
Property Law Office,* NO. 3:09-CV-1509-BR, 2014 WL 2619644, at *4 (D. Or. June 12, 2014)
(citing *Great Seats, Ltd. v. Great Seats, Inc.,* 84 U.S. P.Q. 2d 1235, 1239 (TTAB 2007).  Thus,
submission of an application in the name of a non-owner is grounds for cancellation of the
registration.  *Id.* (citing *Cunningham v. Laser Golf Corp*., 222 F.3d 943, 946 (Fed. Cir. 2000)).
Even though federal registration creates a presumption of the owner's right to use the mark
throughout the United States, this presumption is subject to a senior user's assertion of prior and
continuous use of the mark in an established market.  *See* 15 U.S.C. §1115(b)(5); *Natural
Footwear Ltd. v. Hart, Schaffner & Marx,* 760 F.3d 1383, 1395 (3d Cir. 1985) (noting that a
federal registrant is "still subject to the defense of a prior user of the mark who has established a
market in specific areas notwithstanding that senior user's failure to register" the mark); *Schmidt
v. Finish Line, Inc.,* No. Civ. A. 99-4025, 2000 WL 565216, at *3-4 (E.D. Pa. May 2, 2000)

("Because Finish Line has a valid federal registration, it is presumed to have exclusive rights to use that trademark throughout the United States, even in geographic areas in which it is not trading except in areas where a senior user...has established 'continuous prior use.'")(citations omitted).

In determining ownership of a trademark, courts consider:  (1) priority of use and (2) market penetration.  *Colonial Elec. & Plumbing Supply of Hammonton, LLC v. Colonial Elec. Supply, Ltd.*, No. CIV. 05–5408NLH, 2007 WL 4571105, at *5 (D.N.J. Dec. 27, 2007) (citing *Lucent Info. Mgmt., Inc. v. Lucent Tech., Inc.*, 186 F.3d 311, 316–17 (3d Cir.1999); *Natural Footwear Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383, 1394, 1397 (3d Cir.1985)). "Priority of use" refers to the principle that the first entity to use an inherently distinctive mark in the sale of goods or services is the "owner" of the mark.  *See* 2 McCarthy §16:4 ("The cases are legion that, for inherently distinctive marks, ownership is governed by priority of use.")(footnote omitted). To show ownership, the prior user must establish not only that it used the mark at some date in the past, but also that such use has continued to the present.  *See* 2 McCarthy §16:9. In determining the extent of the senior user's market penetration, courts consider:  (1) the volume of sales of the trademarked product; (2) the positive and negative growth trends in the area; (3) the ratio of the number of actual customers to the potential number of customers; and (4) the amount of product advertising in the area. *Lucent Info. Mgmt.*, 186 F.3d at 317 (citing *Natural Footwear*, 760 F.2d 1383, 1398–99).

In this case, Warman failed to adduce evidence sufficient to demonstrate that Fudgie Wudgie's registration was invalid due to a lack of ownership of the subject marks as of the date the applications were filed.  Although Warman contends that he has been using the "Fudgie Wudgie" wordmark and logo since 1989, both individually and through one or more corporate

22

entities, the record is both underdeveloped and muddled on this point.  In his declaration, Warman provides generalized dates of alleged use, accompanied by mere conclusory assertions that he controlled the use of the marks during the time frames in question and never assigned his rights in the marks to anyone else.  Absent from the record is any factual detail or corroborative documentary evidence establishing the specific manner in which the subject marks were used or controlled by Warman at various points in time.  In addition, while Warman alleges that he previously used the marks by and through a prior corporate entity, no foundational information is set forth in the record concerning the corporate structure or operation of this entity.  Thus, it is impossible to draw any reasoned inferences on this record about whether Warman was, in fact, the real party in control of the marks as he alleges.

Unfortunately for Warman, this dearth of record development works to his disadvantage.  At this procedural juncture, plaintiff produced *prima facie* evidence of its ownership rights in the subject marks by virtue of their registration, 15 U.S.C. §1115(a), and Warman failed to produce competent evidence in rebuttal of this evidentiary presumption.  Although the oral testimony of a single witness, if "sufficiently probative," may be sufficient to establish priority of use, "such testimony should not be characterized by contradictions, inconsistencies, and indefiniteness," and should instead "carry with it conviction of its accuracy and applicability."  *Crystal Ent. & Filmworks, Inc. v. Jurado,* 643 F.3d 1313, 1322 (11th Cir. 2011) (citation and internal quotation marks omitted).  When corroborative documentary evidence is lacking, a sole witness's testimony should be "carefully scrutinized."  *Id*. (internal quotation marks and citation omitted).  In this case, Warman's averments about prior use are so vague and indefinite as to lack significant probative value.[13]  In addition, his declaration is arguably internally inconsistent to

---

[13] Warman's reliance on Falvo's declaration is also unavailing.  Falvo states that, "to the best of [her] knowledge" Warman was "using Fudgie Wudgie as part of his product line and marketing as early as 1989."  (Falvo Decl. at 2,

the extent that Warman appears to claim sole ownership of the mark while also acknowledging

that, at one point in time, he and Falvo were joint registered owners of the Fudgie Wudgie logo

mark.  (Warman Decl. ¶7, ECF No. 84.)[14]  Warman failed to show, through competent evidence,

that there is a genuine factual dispute concerning Fudgie Wudgie, L.P.'s ownership of the Fudgie

Wudgie wordmark and logo mark as of the date it applied for registration.

Similarly, to the extent that Warman is claiming any present-day protectable rights in the

Fudge Wudgie wordmark and logo based on a prior and continuous use in an established market,

the record fails to support this defense.  With respect to market penetration, Warman alleges only

that, in 2006, he licensed the wordmark "Fudgie Wudgie Junior" to an individual who "averaged

1 million dollars in annual Fudgie Wudgie Junior branded [fudge] sales ... primarily throughout

the Midwest and East Coast."  (Warman Decl. ¶6.)  Warman provided no other evidence about

sales volume with respect to other "Fudgie Wudgie" products, growth trends in a particular

geographic area, the extent of any advertising, or the number of actual customers in relation to

potential customers in such areas.  Consequently, there is no evidence before the court that could

establish, beyond mere speculation, that Warman achieved market penetration in a particular

geographic area.

### 2.   Were the Fudgie Wudgie Marks Abandoned?

---

ECF No. 87.)  Statements offered by a declarant "to the best of his or her knowledge" fail to satisfy Rule 56(c)(4)'s requirement that a declaration be made "on personal knowledge," particularly where no supporting detail is provided.  *See, e.g., Told v. TIG Premier Ins. Co*., 149 F. App'x 722, 725-26 (10th Cir. 2005) (witness's verification that facts offered in connection with summary judgment motions were true "to the best of [his] knowledge, information and belief," and which was otherwise devoid of particularity and detail, failed to meet the standards of Rule 56); *Patterson v. Cnty. of Oneida*, N.Y., 375 F.3d 206, 219 (2d Cir. 2004) (stating that the "requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief'").

[14] The court notes that Warman supplied a record from the PTO's online database indicating that Falvo and Warman were listed as the registered owners of the Fudgie Wudgie logo mark until the mark was abandoned on July 9, 2007. (Warman Ex. 3, ECF No. 84-3.)

Warman next argues that the Fudgie Wudgie Marks were abandoned by virtue of Fudgie
Wudgie L.P.'s nonuse of the "Fudgetopia" wordmark and its failure to police the "Fudgie
Wudgie" wordmark and logo.  Alternatively, Warman claims that Three Rivers abandoned the
Fudgie Wudgie Marks.

Under the Lanham Act, a mark is "abandoned" under either of the following scenarios:

(1) When its use has been discontinued with intent not to resume such use.
Intent not to resume may be inferred from circumstances.  Nonuse for 3
consecutive years shall be prima facie evidence of abandonment. "Use" of a
mark means the bona fide use of such mark made in the ordinary course of
trade, and not made merely to reserve a right in a mark.

(2) When any course of conduct of the owner, including acts of omission as
well as commission, causes the mark to become the generic name for the
goods or services on or in connection with which it is used or otherwise to
lose its significance as a mark.  Purchaser motivation shall not be a test for
determining abandonment under this paragraph.

15 U.S.C. § 1127.

To establish the defense of abandonment under the first method, "it is necessary to show
not only acts indicating a practical abandonment, but [also] an actual intent to abandon."
*Marshak v. Treadwell*, 240 F.3d 184, 198 (3d Cir.2001) (internal quotation marks and citation
omitted).  The evidence must demonstrate "an intent not to resume trademark use, as opposed to
a prospective intent to abandon the mark in the future."  *Electro Source, LLC v. Brandess-Kalt-
Aetna Group, Inc*., 458 F.3d 931, 937 (9th Cir. 2006).  "[A] prospective declaration of intent to
cease use in the future, made during a period of legitimate trademark use, does not meet the
intent not to resume standard."  *Id*.

"A party arguing for abandonment has a high burden of proof," *Doeblers' Pa. Hybrids,
Inc. v. Doebler*, 442 F.3d 812, 822 (3d Cir. 2006), because "'abandonment, being in the nature of
a forfeiture, must be strictly proved.'"  *Id*. (quoting *United States Jaycees v. Phila. Jaycees,* 639

F.2d 134, 139 (3d Cir. 1981)).  Based on the record at hand, no reasonable jury could conclude that Fudgie Wudgie abandoned the Fudgetopia wordmark.  Falvo's declaration and appended exhibits demonstrate, at most, that she emailed her corporate counsel on October 18, 2011, to express an interest in transferring the mark to Warman and to inquire about how she could "make this happen."  (Falvo Decl. and Ex., ECF Nos. 87 and 87-1 at 1.)  Assuming that email could be construed as an intent by Fudgie Wudgie, L.P. to abandon the Fudgetopia wordmark, Warman produced no competent evidence to support a finding of actual abandonment.  His only proffer in this regard is his own hearsay statement that, during the aforementioned November 2011 meeting, Falvo told those present that "Fudgie Wudgie was not using the [Fudgetopia] mark and had no intent to use the mark."  (Warman Decl. ¶15.)  As discussed previously, there is no foundational evidence in the record to corroborate Warman's otherwise inadmissible statement. Although nonuse of a mark for three consecutive years constitutes *prima facie* evidence of abandonment, 15 U.S.C. §1127, there is no basis in the record for inferring such a period of continual nonuse beyond Warman's inadmissible account of Falvo's alleged statement.  Even taking Falvo's alleged remark at face value, it is not clear contextually whether Falvo was referencing a complete cessation of use, as is required under the Lanham Act, *see Electro Source*, 458 F.3d at 938, or merely making a hyperbolic comment about her company's generally infrequent use of the wordmark.  Warman failed to produce competent evidence that could satisfy his substantial burden of proving Fudgie Wudgie, L.P.'s alleged abandonment of the Fudgetopia wordmark.

Warman next claims that Fudgie Wudgie, L.P. abandoned the Fudgie Wudgie wordmark and logo by failing to "police" the marks.  A trademark can be deemed legally abandoned if, due to the conduct its owner, the mark becomes generic or otherwise loses its significance as a mark.

15 U.S.C. § 1127.   "[A] trademark owner's failure to pursue potential infringers does not in and of itself establish that the mark has lost its significance as an indicator of origin." *Exxon Corp. v. Oxford Clothes, Inc.,* 109 F.3d 1070, 1080 (5th Cir. 1997).   "Only where the mark has lost all significance as an indication of source or sponsorship through widespread unauthorized use will abandonment result." *Garcia v. Global Dev. Strategies Inc.,* 44 F. Supp. 3d 666, 672-73 (W.D. Tex. Aug. 27, 2014) (citing Restatement (Third) of Unfair Competition § 30 cmt. c. (1995), and *Fort James Corp. v. Kimberly–Clark Tissue Co*., No. 98–C7834, 1999 WL 966144, at *4 (N.D. Ill. Oct. 8, 1999)); *see Taza Sys., LLC v. Taza 21 Co., LLC,* 2013 WL 5145859, at *8 (W.D. Pa. Sept. 13, 2013) (noting that, in order to establish abandonment based on an owner's "failure to police" its mark, the challenger "must establish that the presence of … third-party users in the marketplace has resulted in what has been described as a 'loss of trade significance'") (quoting *Exxon Corp.,* 109 F.3d at 1080).

Warman contends that, during the period that Fudgie Wudgie, L.P. held its registered marks, he too was using the Fudgie Wudgie Marks both personally and "also by allowing Fudgie Wudgie Jr. in the same market place at the same time."  (Warman Resp. to Summ. J. Mot. at 6, ECF No. 82.)  He claims that "FW Entities' CEO" (presumably Falvo) "knew about this and let it happen."  (Id.)  According to Warman, these practices created confusion about whether the single source of origin of the Fudgie Wudgie Marks was Warman personally or Fudgie Wudgie, L.P.  (Id. at 7.)  Warman concludes that "[t]his type of blurring that was authorized by FW Entities means the mark was not distinctive … and therefore is my mark."  (Id.)

Here again, Warman's conclusory averments, without more, are insufficient to satisfy his substantial burden of proving Fudgie Wudgie L.P.'s abandonment of the marks at issue.  Absent from the record is any foundational evidence that would allow a factfinder to assess the extent to

which there were competing uses of the subject trademarks, which particular products or markets were affected, or the extent (if any) to which the Fudgie Wudgie wordmark and logo lost significance as indicators of a particular source of origin.  At the summary judgment stage, the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586-87; rather, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 n.3 (1986) (citing Fed. R. Civ. P. 56(e)).  Evidence that is "merely colorable" or that is "not significantly probative" will not suffice.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).  Here, the record is too underdeveloped to support a reasonable conclusion that Fudgie Wudgie, L.P. abandoned the Fudgie Wudgie wordmark or logo.

Warman also failed to show that there is a triable issue of fact relative to his theory that Three Rivers itself abandoned the Fudgie Wudgie wordmark and logo.  In his brief in opposition to the pending motion, Warman asserts that Three Rivers has "closed the business and informed the public that [it is] no longer selling fudge," and "[t]his means that they have abandoned the marks."  (Warman Resp. to Summ. J. Mot. at 7, ECF no. 82.)  As factual support for this claim, Warman points to Falvo's statement in her declaration that, "to the best of [her] knowledge," plaintiff "has one remaining employee and is no longer producing fudge or any other product in Pittsburgh."  (Falvo Decl. at 2, ECF No. 87.)  Statements offered by a declarant "to the best of his or her knowledge" fail to satisfy Rule 56(c)(4)'s requirement that a declaration be made "on personal knowledge," particularly where no supporting detail is provided.  *See, e.g., Told v. TIG Premier Ins. Co.,* 149 F. App'x 722, 725-26 (10th Cir. 2005) (witness's verification that facts offered in connection with summary judgment motions were true "to the best of [his] knowledge, information and belief," and which was otherwise devoid of particularity and detail, failed to

28

meet the standards of Rule 56); *Patterson v. Cnty. of Oneida, N.Y.,* 375 F.3d 206, 219 (2d Cir. 2004) (stating that the "requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief'").

Under the Lanham Act, "use of a trademark need not always be made directly by the trademark owner." *Doebler,* 442 F.3d at 823. For example, ownership rights in a trademark can be maintained through use of the mark by a controlled licensee, see 2 McCarthy §§18:46 and 18:42, or by a related company whose use of the mark inures to the benefit of the owner. See 15 U.S.C. §1055. Because the record is completely undeveloped about whether and how plaintiff used the subject trademarks, Warman's theory of abandonment is purely speculative.

3.   Was There an Oral Assignment of the "Fudgetopia" Wordmark ?

Warman also argues that that Fudgie Wudgie, L.P., through Falvo, made an oral assignment of the "Fudgtopia" wordmark to him. The Third Circuit Court of Appeals has admonished that "courts must be cautious in scenarios that do not involve clear written documents of assignment." *Doeblers' Pa. Hybrids,* 442 F.3d at 822. "'Requiring strong evidence to establish an assignment is appropriate both to prevent parties from using self-serving testimony to gain ownership of trademarks and to give parties incentive to identify expressly the ownership of the marks they employ.'" *Id.* (quoting *TMT North America, Inc. v. Magic Touch GmbH*, 124 F.3d 876, 884 (7th Cir.1997)).

Warman's evidence of the alleged oral assignment is twofold. First, he proffers his own account of the aforementioned November 2011 meeting, during which Falvo allegedly stated that "the FUDGETOPIA mark was [Warman's]," and that "she didn't care about it," that "Chris had created it," and that Warman's use of the mark would "help lessen the stress on our family." (Warman Decl. ¶15, ECF No. 84.) Apart from being hearsay, Warman's account is entirely self-

29

serving and does not constitute "strong evidence" of the alleged assignment. Second, Warman proffers the declaration of Falvo, which establishes that Falvo emailed her attorney in October 2011, to inquire about how she could go about transferring the Fudgetopia wordmark to Warman. As of October and November 2011, however, Fudgie Wudgie, L.P.'s rights to the Fudgetopia wordmark were encumbered by the perfected security agreements that Fudgie Wudgie, L.P. had entered into in connection with the first Citizens Note and the Meakem Note. Warman did not produce evidence sufficient to establish that Fudgie Wudgie, L.P. validly assigned its rights to the Fudgetopia mark to him in 2011.

### 4.   Was Three Rivers' Purchase of Fudgie Wudgie L.P.'s Assets Invalid?

Warman contends that Three Rivers does not own the Fudgie Wudgie Marks because it never legally purchased the assets of Fudgie Wudgie, L.P. and FW Chocolatier. Warman vaguely asserts in his brief that certain unspecified "transactions that were entered into by Three Rivers, Inc. were fraudulent ... and conditional so therefore no transaction in fact even took place." (Warman Resp. to Summ. J. Mot. at 2, ECF No. 82.)  Although these "transactions" are not specified in his brief, Warman's declaration suggests that he is challenging the validity of an undocumented "management contract" that Falvo, acting on behalf of Fudgie Wudgie, L.P. and FW Chocolatier, allegedly entered into in the fall of 2011 with Three Rivers' agents.  (Warman Decl. ¶14, ECF No. 84.)   In essence, Warman claims that Phin Stubbs (plaintiff's principal and CEO) and Richard Condi (plaintiff's agent) fraudulently induced Falvo to authorize the formation of a new company – "Fudgie Wudgie Management Company Co., LLC" – that would take over the management of Fudgie Wudgie L.P.  (Id.)

Warman's proffer fails to satisfy the requirements of Rule 54(c) insofar as he speculates that Falvo "felt forced to sign over the assets" of the company (Warman Decl. ¶14, ECF No. 84)

and insofar as Warman and Falvo refer to various written documents that should speak for themselves, but have not been made part of the summary judgment record.[15]  More fundamentally, however, Warman's proffer is not relevant to the chain of title that led to Three Rivers' acquisition of Fudgie Wudgie L.P.'s registered trademarks. Based on the record at hand, it appears that the operative agreement through which Three Rivers acquired title to Fudgie Wudgie L.P.'s assets was the May 26, 2012 Collateral Agreement, a copy of which Three Rivers submitted in support of its motion.  (Pl.'s Ex. OO, ECF No. 65-41.)  To the extent that Warman is alleging this agreement was fraudulently induced or made subject to other verbal conditions that were never fulfilled, his argument is foreclosed by the fact that the Collateral Agreement contained an integration clause which expressly stated that: "[t]his Agreement contains the entire agreement of the Parties hereto and no party shall be bound by any terms or representations not expressed in writing." (Id. ¶10.)  Warman did not show that plaintiff's purchase of the underlying promissory notes was legally invalid.  Falvo vaguely asserts that Condie, "acting as an agent of Phin Stubbs, negotiated a reduced buyout of the Citizens Bank and Meakem Notes" under the premise that a "White Knight Proposal" was being honored.  (Falvo Decl., ECF No. 87.)  However, no foundational detail or other evidence was supplied by Falvo or Warman to support this conclusory averment.  Even if Falvo was duped into consenting to plaintiff's purchase of the Citizen Bank and Meakem Notes, this fact is of no legal moment, as Warman did not identify any aspect of the loan documents, or any controlling legal principle, which establishes that Fudgie Wudgie, L.P.'s consent was a necessary condition precedent to plaintiff's purchase of the Citizens Bank and Meakem notes.

---

[15] The court notes, for example, that Warman's declaration (ECF No. 84) references, and purports to rely on, the undocumented terms of an alleged "management contract," while Falvo's declaration (ECF No. 87) references Stubbs' and Condi's alleged termination of an "Asset Purchase Agreement," a "Management Agreement," an "Employment Agreement," and "Promissory Notes to Fudgie Wudgie."

Warman's final argument is that Falvo lacked any legal authority to convey title to the registered trademarks because the marks were marital property. Warman purports to support this conclusory averment by reference to "a true and correct copy of the Family Court indicating that trademarks are marital property and that Christine Falvo did not have authority to transfer them." (Warman Decl. ¶16, ECF No. 84.) Warman failed to submit the referenced authority and, consequently, the court will not consider this argument further.

5.  Summary of the Court's Analysis

Based on a thorough review of the summary judgment record, the court finds, as a matter of law, that Three Rivers validly acquired Fudgie Wudgie, L.P.'s rights to the subject trademarks by virtue of its perfected security interests, the 2012 Collateral Agreement and written assignment of the subject trademarks or by virtue of its purchase of Fudgie Wudgie, L.P.'s assets at the August 29, 2012 sheriff's sale. Because the trademarks at issue are registered on the PTO's principal register, Three Rivers is entitled to rebuttable presumptions that the marks are valid, the registration of the marks was valid, Three Rivers owns the marks in question, and it has the exclusive right to use those marks. 15 U.S.C. §1115(a). Warman's response raises issues that implicate a number of possible defenses, but the evidence he proffered fails to establish the applicability of these defenses beyond mere speculation. Because Warman must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), the plaintiff's motion for partial summary judgment will be granted.

B.  DEFENDANT WARMAN'S MOTION FOR LEAVE TO AMEND

Also pending before the court is Warman's motion for leave to amend his answer and assert a counterclaim. Specifically, Warman seeks to assert the defenses of laches, estoppel, and

consent.  He seeks to assert a counterclaim for cancellation of the subject marks on the grounds that the marks were abandoned or the registrations are invalid.

A district court has discretion to deny a request for leave to amend under Rule 15(a) if it is apparent from the record that:  (1) the moving party has demonstrated undue delay, bad faith, or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.  *Lake v. Arnold,* 232 F.3d 360, 373 (3d Cir. 2000).  At this procedural juncture, the case is more than two years old and the deadline for discovery has passed.  For the reasons discussed herein at length, the proposed counterclaims are futile on this record, and court finds no basis to believe that Warman's defenses of laches, estoppel, and consent would have merit.  Further discovery should not be permitted given the delays that have already occurred in the case and the prejudice that plaintiff would suffer by virtue of additional delays and expenses.  Under these circumstances, further amendment is not appropriate and will not be permitted.

## V.  Conclusion

Based upon the foregoing reasons, Three Rivers' motion for partial summary judgment (ECF No. 62) will be granted and Warman's motion for leave to file an amended answer and counterclaim (ECF No. 85) will be denied. An appropriate order will be entered.

By the court,

s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge

Dated:  July 29, 2015